RECEIVED
U.S.D.C. CLERK, CHARLESTON, SC

2010 FEB 10 P 3: 33

| | | |
|---|---|---|
| Donnie M. Malpass, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 8:08-3243-SB-BHH |
| | ) | |
| Cpl. Dean I. Gibson and | ) | |
| Cpl. Wendy Childers, | ) | |
| | ) | **ORDER** |
| Defendants. | ) | |



This matter is before the Court upon the Plaintiff's *pro se* complaint, filed pursuant to 42 U.S.C. § 1983. The record contains the report and recommendation ("R&R") of United States Magistrate Judge Bruce Howe Hendricks, which was made in accordance with 28 U.S.C. § 636(b)(1)(B). The Plaintiff filed a motion for an extension of time to submit written objections to the R&R, which the Court granted. See 28 U.S.C. § 636(b)(1) (stating that a party may object, in writing, to an R&R within ten days after being served with a copy of that report). On December 9, 2009, the Plaintiff filed timely objections as well as a motion for the appointment of counsel.

## BACKGROUND

In his verified complaint, the Plaintiff alleges as follows:

I, Donnie Malpass, was asleep on the sidewalk on the night of 6-20-07 when the officers CPL Dean Gibson and CPL Wendy Childers stopped and approached me. They picked me up and put me in the backseat of the patrol car. My neighbor was on his way to work and seen [sic] what was going on, and he Lenord [sic] asked the officers what I had done. They said I was asleep on the sidewalk and asked Leonard who I was. He told them I was Donnie Malpass who lived in front of him, when they heard this they said, Oh! the child molester. At this time, Lenord [sic] left for work. When the officers Gibson + Childers got me in the backseat, Wendy got in on the left side and Gibson got in on the right side of me in the backseat and started

calling me a child molester and saying I like little boys and little girls. Then Wendy put her flashlight around in front of me and pulled my head back with it. Then Gibson started beating me in the head. They strangled and beat me uncon[scious] three times. While I was uncon[scious] Wendy would beat my left leg till I came to. Then they took me to jail and charged me with assault on a police officer of a high and aggravated nature because Officer Gibson broke his right [hand] while beating me in the head.

(Entry 1 at 3-4.)

On November 5, 2008, the Defendants filed an answer asserting various defenses including failure to state a claim and qualified immunity, and alleging a state law, tort-based counterclaim. Then, on March 5, 2009, the Defendants filed a motion for summary judgment along with the affidavit of Defendant Gibson, the affidavit of Defendant Childers, the incident and booking reports, the Plaintiff's booking photos, the Plaintiff's inmate medical forms, a copy of the Plaintiff's RAP sheet, and excerpts from the Plaintiff's trial transcript. In their motion, the Defendants assert that the record does not establish, as a matter of law, that either Defendant used excessive force in effecting the Plaintiff's arrest.

The Plaintiff filed a response in opposition to the Defendants' motion, wherein he restates his allegations and argues that the evidence relied upon by the Defendants cannot be the basis of summary judgment because a jury found him innocent of the charges of assaulting an officer.[1] The Plaintiff also acknowledges that he is not alleging a slander claim against the Defendants, but he asserts that the Defendants' alleged statements are evidence of their state of mind. The Plaintiff contends that the record establishes, as a matter of law, that the Defendants used excessive force against him.

On September 8, 2009, the Plaintiff filed a motion to supplement, which the

---

[1] The Plaintiff attached copies of his state court indictments and the verdict forms from his trial.

Magistrate Judge granted, and on November 9, 2009, the Plaintiff filed a "supplement." In this filing, the Plaintiff swears that the information he gives is true, and he asserts that certain of his booking records are missing. Attached to the supplement are two undated photographs of the Plaintiff's leg and medical notes from July 3, 2007, and June 13, 2007.

On November 13, 2009, the Magistrate Judge filed an R&R recommending that the Court grant the Defendants' motion for summary judgment and dismiss the Defendants' state law counterclaim without prejudice. In the R&R, the Magistrate Judge determined that the Plaintiff failed to state an excessive force claim.

On December 9, 2009, the Plaintiff filed objections to the R&R and a motion for the appointment of counsel. In his objections, the Plaintiff does not necessarily point to any particular alleged error in the R&R; rather, he seems to object to the R&R as a whole. He asserts that "there has been enough evidence and proof" and that the Defendants' motion for summary judgment "is bogus and without merit." He claims that he has "been proven innocent on all charges of resisting arrest," and he asks various rhetorical questions in an effort to raise doubts about the Defendants' evidence. For instance, he asks: "If I was being combative while being booked why do I look so calm in the booking photo?" (Entry  42 at 2.) He also asserts that he could not have kicked and fought the officers in the patrol car because he is a large man and he was in handcuffs. Attached to his objections, the Plaintiff included a medical form (a copy of which was included with the Defendants' motion for summary judgment), the verdict forms that he included with his response in opposition to the Defendants' motion, and a copy of Gibson's medical form, which states that Gibson hurt his hand while he was scuffling with a suspect and had to take the suspect to the floor. The Plaintiff points out that the "cause of injury" box indicates "direct blow" and not a "fall."

## STANDARD OF REVIEW

**I.     Summary Judgment Standard**

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper if "there is no genuine issue as to any material fact." The Court is not to weigh the evidence, but determine whether there is a genuine issue of fact. Anderson v. Liberty Lobby, Inc. 477 U.S. 242, 249 (1986). If no material dispute exists, summary judgment should be granted against the party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party bears the burden of proof. Celotex Corp. v. Catrett, 477 U.S. 317 (1986). All evidence should be viewed in the light most favorable to the non-moving party. See Perini Corp. v. Perini Const., Inc. 915 F.2d 121, 123-24 (4th Cir. 1990).

**II.     The Magistrate Judge's R&R**

This Court is charged with conducting a *de novo* review of any portion of the R&R to which a specific objection is registered and may accept, reject, or modify, in whole or in part, the recommendations outlined by the Magistrate Judge. 28 U.S.C. § 636(b)(1)(B).  Any written objection must specifically identify the portion of the R&R to which the objection is made and give the basis for the objection. Id.

## DISCUSSION

**I.     Excessive Force**

In addressing an excessive force claim brought pursuant to § 1983, the Court must begin by identifying the specific constitutional right allegedly infringed. The Court must therefore determine whether the Plaintiff's claims are governed by the Fourth, Fifth, Eighth,

or Fourteenth Amendment.

"The Fourth Amendment governs claims of excessive force during the course of an arrest, investigatory stop, or other 'seizure' of a person." Riley v. Dorton, 115 F.3d 1159, 1161 (4th Cir. 1997) (citing Graham v. Connor, 490 U.S. 386, 388 (1989)); see also Tennessee v. Garner, 471 U.S. 1 (1985). Thus, claims that law enforcement officers have used excessive force in the course of an arrest or other seizure should be analyzed under the Fourth Amendment and its reasonableness standard. See Graham, 490 U.S. at 395. In determining whether the force used in the context of an arrest is reasonable under the Fourth Amendment, the Court must pay "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Graham, 490 U.S. at 396 (citing Tennessee, 471 U.S. at 8-9). Moreover, "the 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Id. "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." Id. at 396-97. And the "reasonableness" inquiry in the context of the Fourth Amendment is an objective one: "the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their intent or motivation." Id. at 397.

In Riley, the Fourth Circuit rejected the concept of a "continuing seizure" and found that the Fourth Amendment "does not extend to the alleged mistreatment of arrestees or

pretrial detainees in custody." Riley, 115 F.3d at 1164. Instead, "excessive force claims of pretrial detainees [and arrestees] are governed by the Due Process Clause of the Fourteenth Amendment." Id. at 1166. "To succeed on a claim of excessive force under the Due Process Clause of the Fourteenth Amendment, [a plaintiff] must show that Defendants 'inflicted unnecessary and wanton pain and suffering.'" Taylor v. McDuffie, 155 F.3d 479, 483 (4th Cir. 1998) (quoting Whitley v. Albers, 475 U.S. 312, 320 (1986)). " 'In determining whether [this] constitutional line has been crossed, a court must look to such factors as the need for the application of force, the relationship between the need and the amount of force used, the extent of the injury inflicted, and whether the force was applied in a good faith effort to maintain and restore discipline or maliciously and sadistically for the very purpose of causing harm.' " Orem, 523 F.3d at 446 (quoting Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973)). In addition, absent extraordinary circumstances, a plaintiff must show that his injuries are more than *de minimis*. Norman v. Taylor, 25 F.3d 1259, 1263 n.4 (4th Cir. 1994) (en banc). Extraordinary circumstances are present when "the force used [is] of a sort repugnant to the conscience of mankind . . . or the pain itself [is] such that it can properly be said to constitute more than *de minimis* injury." Id.; see also Orem v. Rephann, 523 F.3d 442, 447-48 (4th Cir. 2008) ("It is well settled that a pretrial detainee with only *de minimis* injury may only recover if the challenged conduct resulted 'in an impermissible infliction of pain' or was otherwise 'of a sort repugnant to the conscience of mankind.' ") (quoting Norman v. Taylor, 25 F.3d at 1263 n.4).

Interestingly, Riley did not establish a rule to determine when Fourth Amendment protections end and Fourteenth Amendment protections begin, and the Fourth Circuit has recognized that "[t]he point at which the Fourth Amendment protections end and the

6

Fourteenth Amendment protections begin is often murky." <u>Orem</u>, 523 F.3d at 445. In

<u>Orem</u>, the Fourth Circuit found that because Orem's claim arose during her transport to jail

(after she had been arrested but before she had been formally charged), her status as an

arrestee required application of the Fourteenth Amendment to her claim. <u>Id.</u> at 446; <u>see</u>

<u>also</u> <u>Robles v. Prince George's County</u>, 302 F.3d 262, 268 (4th Cir. 2002) ("Once the

single act of detaining an individual has been accomplished, the [Fourth] Amendment

ceases to apply.").

Here, the Plaintiff contends that the Defendants picked him up and placed him in

the backseat of the patrol car. He then contends that the officers got in the backseat on

either side of him and proceeded to beat him and strangle him. Because the Defendants

had effectively seized the Plaintiff once they placed him in the backseat, and because the

Fourth Circuit has rejected the concept of a "continuing seizure," it appears that the

Fourteenth Amendment applies to the Plaintiff's claims of excessive force.[2]

Applying Fourteenth Amendment scrutiny, the Plaintiff must show that Defendants

"'inflicted unnecessary and wanton pain and suffering,'" considering such factors as the

need for the application of force, the relationship between the need and the amount of



force used, the extent of the injury inflicted, and whether the force was applied in a good

---

[2] In their motion for summary judgment, the Defendants incorrectly rely upon the Eighth Amendment as the relevant source of constitutional protection. "Eighth Amendment scrutiny is appropriate only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions." <u>Ingraham v. Wright</u>, 430 U.S. 651, 671, n. 40 (1977).

Also, in the R&R, the Magistrate Judge analyzed the Plaintiff's claims under both the Fourth Amendment and the Fourteenth Amendment. Realizing that the line between Fourth Amendment and Fourteenth Amendment protection is "murky," this Court feels that, because the Defendants had effectively seized the Plaintiff upon placing him in the backseat of the patrol car, Fourteenth Amendment scrutiny is appropriate.

faith effort to maintain and restore discipline or maliciously and sadistically for the very purpose of causing harm." Taylor, 155 F.3d at483 (quoting Whitley, 475 U.S. at 320).

After review, the Court believes that a genuine dispute of material facts exists based on the parties' vastly differing accounts.[3] Specifically, the Defendants contend that the Plaintiff spit in Defendant Childers' face when he was being placed in the vehicle and that they never hit or struck the Plaintiff after he was placed in the vehicle. In contrast, the Plaintiff contends that the Defendants surrounded him in the backseat of the car, called him a child molester, beat him in the head and leg, and strangled him to the point of unconsciousness three times. Viewing the facts in the light most favorable to the Plaintiff and assuming for purposes of summary judgment that the Defendants beat him and strangled him to the point of unconsciousness,[4] a genuine issue of material fact exists as to whether the Defendants' alleged use of force violated the Plaintiff's Fourteenth

---

[3] In Scott v. Harris, 550 U.S. 372 (2007), the Supreme Court stated: "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." 550 U.S. 372, 380 (2007). Notably, in Scott, the court had the benefit of a videotape that showed conclusively what had happened. Here, there is no videotape or other conclusive evidence of what happened between the time the Defendants arrived on the scene at 5:20 a.m. and the time they arrived at the jail at 5:36 a.m.

Moreover, the Plaintiff's claims relate to events occurring before his arrival at the jail, and therefore, events occurring after the Plaintiff's arrival the jail (and the evidence of those events) is less relevant than it would be to a claim based on the Defendants' take-down of the Plaintiff at the jail. As recognized by the Defendants, the Plaintiff has not raised a claim based on the take-down; rather, this case is based solely on the Defendants' alleged use of excessive force in the backseat of the patrol car.

[4] The Defendants admit in their motion that the Plaintiff's allegations of being beaten and strangled in the patrol car must be taken as true for purposes of their motion. Nevertheless, they assert that there is no evidence in the record to establish a violation of the Plaintiff's constitutional rights.

Amendment rights, especially when considering the need (or lack thereof) for the use of force and whether the force was applied in a good faith effort to maintain and restore discipline or maliciously and sadistically for the very purpose of causing harm.[5]

Nevertheless, "[e]ven if there is a genuine issue of material fact as to whether Defendants behaved maliciously or sadistically after the need for force had subsided," a plaintiff must also demonstrate that the injuries were "more than *de minimis*" or that "the force used [is] of a sort repugnant to the conscience of mankind . . . or the pain itself [is] such that it can properly be said to constitute more than *de minimis* injury." Carr v. Deeds, 453 F.3d 593, 605 (4th Cir. 2006) (quoting Norman v. Taylor, 25 F.3d 1259, 1263 n.4 (4th Cir. 1994) (en banc)) (internal quotation marks omitted).

In their motion for summary judgment, the Defendants assert that there is no evidence that the Plaintiff was injured in any way during his arrest, much less in a manner "repugnant to the conscience of mankind." The Defendants assert that the Plaintiff's mug shot shows no sign of any injury to his head or neck. In addition, the Defendants assert that the Plaintiff never requested medical attention related to the alleged incident in the nine days following his arrest when he was incarcerated and received medication for his previously-existing medical conditions.

In contrast, the Plaintiff contends that the Defendants' use of force resulted in severe back, neck, and leg injuries. He also claims that his mug shot is too dark to reflect any signs of injury and that he twice sought medical attention at the jail due to his injuries but that the records are being withheld. He also claims that he made a statement about

_____

[5] As noted, a jury found the Plaintiff innocent of both counts of assaulting an officer.

9

his injuries while being booked at the jail but that the statement is also being withheld. In addition, the Plaintiff submitted two undated photographs showing a large bruise on his leg, as well as medical notes from July 3, 2007, and June 13, 2007.[6] The medical notes from July 3, 2007, provide as follows:

> CHIEF COMPLAINT: talk about bruises made by police. 50y WM who apparently was arrested about a week ago. This constitutes a parole violation by the police. He alleges that they had him in the back seat of the cruiser and choked him with a flash light while hitting him in the head. The police state he was resisting arrest, he says. He wants to see if he can generate evidence about getting hit in the head, generating a concussion.
>
> . . .
>
> SKIN: He has roughly a four centimeter light bruise on the anterior left thigh and possibly an 8 cm area on the posterior of the left thigh which are tender to palpation. No induration is noted. There is no abnormality in the skin on his face or head on the right temple where he says he was struck.

(Entry 35-2 at 1-2.)

After review, the Court agrees with the Defendants that the Plaintiff has failed to show more than *de minimis* injuries. Nevertheless, because an issue of material fact exists as to what actually happened and how much force the Defendants used, the Court cannot determine whether extraordinary circumstances are present, i.e., whether the Defendants' conduct resulted in an impermissible infliction of pain or was otherwise of a sort repugnant to the conscious of mankind.[7] See Taylor, 155 F.3d at 485, n. 9 ("[T]he *de minimis* rule

---

[6] As pointed out by the Magistrate Judge, the Plaintiff's medical records from June 13, 2007, do not support the Plaintiff's claim because they pre-date his arrest. In fact, these records appear to negate the Plaintiff's claims of neck and back injuries resulting from his arrest because he complained of neck and back pain on June 13 and apparently had missed two appointments with the neurosurgeon prior to this date.

[7] In other words, the Court believes that the unprovoked and unnecessary beating and strangling of a restrained arrestee or detainee, who does not present a risk of harm

does not apply to conduct 'repugnant to the conscience of mankind.' ") (quoting Hudson v. McMillian, 503 U.S. 1, 10 (1992));[8] see also Watford v. Bruce, 126 F. Supp. 2d 425 (E.D. Va. 2001) (holding that where prison officials maliciously and unprovokedly use force to cause harm, inmates need not present evidence of significant injury to state a cause of action under §1983).

For purposes of summary judgment, it is not this Court's province to make credibility determinations, and the Court must view the facts in the light most favorable to the Plaintiff. Accepting the Plaintiff's allegations that the Defendants unnecessarily and unprovokedly[9] beat and strangled him after placing him in the patrol car, the Court finds that it would be improper to grant summary judgment in favor of the Defendants at this time.[10] Accordingly,

---

to the officers, would violate contemporary standards of decency and amount to the sort of force repugnant to the conscience of mankind. However, because there is a genuine issue of fact as to what actually happened in this case, the Court cannot state for certain whether the Plaintiff has satisfied either of the aforementioned *de minimis* exceptions.

[8] In Hudson, the Supreme Court stated: "when prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency are always violated. This is true whether or not significant injury is evident. Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury." 503 U.S. at 9.

[9] Defendant Gibson's trial testimony actually supports the Plaintiff's contention that he was not being combative before the Defendants allegedly beat and strangled him. Gibson testified that the Plaintiff "wasn't being combative he just wouldn't cooperate. He wasn't fighting with us. He just wasn't doing just exactly what we were asking you know to stick his feet into the car, have a seat, to scoot over." (Entry 19-8 at 2.) Of course, the Defendants contend that they never beat or strangled the Plaintiff while he was in the backseat.

[10] The Plaintiff has presented sufficient evidence to create a jury question as to whether the Defendants violated his Fourteenth Amendment right to be free from excessive force, and ordinarily, the burden would shift to the Defendants to establish their entitlement to qualified immunity. Here, however, the Defendants did not raise the defense of qualified immunity in their motion for summary judgment.

the Court declines to adopt the R&R and denies the Defendants' motion for summary judgment.

In addition to filing objections to the R&R, the Plaintiff filed a motion for the appointment of counsel. "[I]t is well settled that there is no right to the appointment of counsel in an action brought pursuant to 42 U.S.C. § 1983." Joe v. Funderburk, 2006 WL 2707011, * 4 (D.S.C. Sept. 18, 2006) (citing Hardwick v. Ault, 517 F.2d 295, 298 (5th Cir. 1975)). And although the courts have the authority to appoint counsel for indigent defendants in civil cases, see 28 U.S.C. § 1915(e), courts should only exercise this authority in "exceptional circumstances." Cook v. Bounds, 518 F.2d 779, 780 (4th Cir. 1975). Here, because a genuine issue of material fact exists, and because this case involves complicated legal principles, the Court finds that "exceptional circumstances" warrant the appointment of counsel. Accordingly, the Court grants the Plaintiff's motion.

## CONCLUSION

Based on the foregoing, the Court declines to adopt the R&R (Entry 36), and it is

**ORDERED** that the Defendants' motion for summary judgment (Entry 19) is denied and the Plaintiff's motion for the appointment of counsel (Entry 43) is granted.

**IT IS SO ORDERED.**

The Honorable Sol Blatt, Jr.
Senior United States District Judge

February __10__, 2010
Charleston, South Carolina

12